UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

DANIEL ZACHARY HARPER,

Plaintiff,

v.

DR. WARREN ROBERTS, N.P.M. DAVIES, JOE BUGHER, NURSE HALLADAY, S. WHITBREAD,

Defendants.

Case No. 2:24-cv-00303-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Daniel Zachary Harper, who is currently incarcerated by the Oregon Department of Corrections ("ODOC") and is representing himself in this matter, brings this civil rights action under 42 U.S.C. § 1983. Plaintiff's claims are based on the medical treatment he received while he was housed at the Eastern Oregon Correctional Institution. In 2020, plaintiff underwent hernia surgery in his abdomen and sometime thereafter began experiencing allegedly "debilitating complications," namely abdominal pain near the surgery site. Over the next few years, plaintiff visited several treatment providers, including the surgeon who performed the initial procedure, regarding his ongoing abdominal pain.

Generally speaking, plaintiff believed there was something wrong with the hernia repair. He asserts that the medical treatment he was provided—essentially a conservative approach that

responded to plaintiff's complaints of ongoing pain in the surgical area by monitoring the condition over time, obtaining CT scans, and offering different medications for pain, instead of approving plaintiff's request to have a second surgery in an attempt to alleviate his symptoms—was constitutionally inadequate.

Plaintiff's initial complaint asserted the following claims:

- An Eighth Amendment claim against defendants Dr. Warren Roberts, N.P.M. Davies, Joe Bugher, Nurse Halladay, S. Whitbread, and Dr. John McBee[1] because they allegedly "deni[ed] plaintiff the revision surgery to his umbilical area." Compl. ¶ 36; *see also id.* ¶¶ 4–9 (naming individual defendants).
- A First Amendment retaliation claim against Roberts and Davies in which plaintiff asserts that they "failed to schedule the approved 2022 CT scan, denied Plaintiff the surgery on March 14, 2023, denied the CT scan again on May 16, 2023, then den[ied] Plaintiff follow-up appointments about his abdomen and again fail[ed] to schedule the CT scan approved in July, 2023 all while leaving Plaintiff to suffer." *Id.* ¶ 37.

Later, plaintiff sought and was granted, *see* Order (July 7, 2025), ECF 51, leave to file a supplemental complaint asserting the following claims:

- A First Amendment claim against Davies for allegedly "retaliating against . . . and trying to kill" plaintiff in September of 2024. Suppl. Compl. ¶ 15, ECF 52. Plaintiff bases this claim on the allegation that in the course of treating plaintiff for "dangerously low blood pressure and a very elevated heart [] rate" that day, Davies "prescribed an antibiotic she knew plaintiff to be allergic to[.]" *Id.* ¶¶ 11–12.
- An Eighth Amendment claim against Davies based on the same mistaken prescription event in September of 2024. *Id.* ¶ 16.

Currently pending are a host of motions brought by the various parties, including the following dispositive motions going to the merits of plaintiff's claims:

- Plaintiff's Motion for Summary Judgment (ECF 76);
- The State Defendants' (Davies, Halladay, and Whitbread) Motion for Summary Judgment (ECF 92);

[1] Plaintiff later voluntarily dismissed Dr. McBee from the suit. *See* ECF 27.

- Defendant Bugher's Motion for Summary Judgment (ECF 89); and
- Defendant Roberts' Motion for Summary Judgment (ECF 91).[2]

Plaintiff has also filed a series of motions roughly comprising a collection of evidentiary or other procedural issues including:

- Plaintiff's Motion to Strike Declaration of Jason Villers (ECF 101);
- Plaintiff's Motion to Strike the Declaration of Jason Villers, Motion to Strike the Declaration of Dr. Irish, Motion to Strike Portions of the Declaration of Michael Seale and Motion to Strike Defendants' Motion for Summary Judgment, in which he also moved to strike a portion of the complaint (ECF 103);
- Plaintiff's Motion for Production of Video Records (ECF 125); and
- Plaintiff's Motion for Criminal Referrals (ECF 128).

As explained more fully below, defendants are entitled to summary judgment on all of plaintiff's claims. Plaintiff did not exhaust the available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") for the supplemental claims he has asserted against Davies and thus those claims are dismissed without prejudice for failure to exhaust. Plaintiff's claims based on the treatment he received for his abdominal pain are also subject to summary judgment because, among other things, there is no evidence demonstrating that defendants were deliberately indifferent to plaintiff's condition or that the TLC Committee's denial of plaintiff's request for a second surgery was an adverse action that was caused by defendants' retaliatory reaction to his previous complaints about his care providers. Plaintiff's various procedural motions are largely denied because they are baseless or because they are mooted or otherwise obviated by the rulings on exhaustion or on the merits of plaintiff's claims.

---

[2] Defendant Roberts also moved to join the other defendants' replies filed in support of their separate motions for summary judgment, and that motion (ECF 121) is granted. This Opinion and Order generally refers to all of these individuals collectively as "defendants," except where additional specificity is needed for the analysis.

## I. Plaintiff's Motion to Strike Portion of the Complaint (ECF 103)

Before discussing the parties' various arguments that are more directly aimed at the merits of plaintiff's claims, it is necessary to discuss a threshold issue raised by plaintiff's motion to strike a portion of the complaint, ECF 103. In that motion, plaintiff writes as follows:

> Plaintiff moves this court to Strike portion of ¶ 37 of the Complaint removing the words, *"denied the CT scan again on May 16, 2023 then deny Plaintiff follow-up appointments about his abdomen and again fail to schedule the CT scan approved in July, 2023 all while leaving Plaintiff to Suffer."*
>
> The primary issue related to the Second Claim of the Complaint is that Defendants Roberts and Davies denied Plaintiff the surgery requested by Dr. McBee on March 14, 2023 and the decision by them was based on First Amendment Retaliation.

Pl. Mot. Strike 2, ECF 103. The State Defendants responded to this motion by asserting that a motion to strike was "not the appropriate vehicle for making this kind of change to the pleadings." State Defs. Resp. 2, ECF 106. In subsequent briefing, the State Defendants seemed to back away from that objection, and instead emphasized the practical implications suggested by plaintiff's motions practice that "seemed to narrow down the issues to two 1983 claims against State Defendants: 1. Eighth Amendment claim for denying abdominal surgery and failure to provide pain management; and 2. First Amendment claim for retaliation and chilled speech." State Defs. Reply 2, ECF 118. The court agrees with this characterization and notes that plaintiff did not object to this description in any of the numerous motions or other documents he subsequently filed with the court.

The analysis below, therefore, generally follows this framework in analyzing the parties' motions regarding plaintiff's claims asserted in his initial complaint and those asserted in the supplemental complaint.

## II. PLRA Exhaustion

The first substantive issue, as is common in cases of this type, is whether plaintiff exhausted the available administrative procedures for inmates to raise their concerns about the conditions of their confinement or the health care they received. *See* State Defs. Mot. Summ. J. 10, ECF 92; State Defs. Reply 4, ECF 118. Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The purposes of the exhaustion requirement are two-fold: to protect administrative agency authority, by providing agencies the opportunity to correct their mistakes before being brought into federal court, and by encouraging adherence to agency procedures; and to promote efficiency because resolution by an agency is typically faster and more economical than litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

"Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.' " *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock,* 549 U.S. 199, 204 (2007)). The court employs a burden-shifting framework to analyze administrative exhaustion under the PLRA. First, the defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Next, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Id.* This can include "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously

futile." *Id.* An inmate need only exhaust those remedies that are available "as a practical matter," meaning that the remedy must be "capable of use; at hand." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005). Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1172.

To begin with, plaintiff has not identified any evidence in the record reflecting that he filed a grievance regarding the 2024 incident wherein Davies allegedly prescribed plaintiff the wrong medication. *See* State Defs. Mot. Summ. J. 17, ECF 92. Accordingly, the Eighth and First Amendment claims plaintiff asserted in the supplemental complaint against Davies regarding this incident are dismissed without prejudice for failure to exhaust. *See Allen v. Thompson*, No. 6:22-cv-00542-YY, 2024 WL 3460920, at *3 (D. Or. July 18, 2024) (citing *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005)).

As for plaintiff's claim that Roberts and Davies denied plaintiff's request for a second surgery in March of 2023 in retaliation for the complaints that plaintiff had raised about them, plaintiff filed grievance EOCI 2023-03-039 dated March 17, 2023 ("March 2023 Grievance"), in which he wrote:

> I'm grieving the TLC Committee[3] for refusing to end my almost 3 years of agony and allow the removal of the mesh and scar tissue. It clearly violates my 8th Amendment Rights against cruel and unusual punishment and I believe that they've done it in retaliation for complaining and reporting misconduct like perjury (Davies) and getting another member on the Committee put under review by

---

[33] The Therapeutic Level of Care ("TLC") Committee is the body that reviewed and denied plaintiff's request for a second surgery in March of 2023. *See* Harper Decl., Ex. 8 at 2, ECF 77 at 22. Though it is not entirely clear from the evidence in the record what precise role Roberts and Davies performed in connection with the TLC Committee generally or in the denial of plaintiff's request more specifically, it is generally undisputed that Roberts and Davies were involved in the decision and thus it is not necessary to discuss their connection to the TLC Committee in further detail here.

> the Oregon Medical Board (Roberts). I've been in constant agony for almost 3 years, and for these people to decide it's "not medically indicated" at this time is something they will regret. [4]

The Grievance Response form states:

> I have read the above referenced grievance and reviewed your medical records regarding the TLOC committee decision to not approve the removal of the mesh and scar tissue at this time.
>
> Upon review of your chart, on 3/6/2023, Dr. McBee discussed the results of your abdominal CT with you. The results of the CT were a normal appearance of umbilical hernia repair and mesh; no evidence of a new or recurring umbilical hernia. Dr. McBee then wrote he would be willing to remove the scar tissue and mesh but there was a possibility it would provide no pain relief at all and could cause bleeding and/or infection.
>
> M. Davies, FNP presented the removal of the mesh and scar tissue to the TLOC committee on 3/14/2023 . This committee is comprised of multiple ODOC medical providers. After reviewing your information and some discussion, it was determined not medically indicated at this time.[5]

Plaintiff appealed the response, and wrote as follows:

> If you [illegible] won't fix this, you will [regret] it. STOP LYING ABOUT ME AND TO ME. The CT Scan McBee ordered you didn't even transport me to. I was a "no show." I am in constant agony. The area is swollen, inflamed, and McBee felt it and [illegible] scar tissue. Stop this torture.
>
> Don't forget also the fact that Davies LIED AT MY TRIAL and that Dr. Roberts was put under review by the medical board because of mistreating me Their denial is retaliation.
>
> This is so inhumane and the last paragraph in the response proves how much you people don't care or align what you say with what you do.[6]

---

[4] Harper Decl., Ex. 8 at 1, ECF 77 at 21. Note that portions of this exhibit are very difficult to read; plaintiff's message, though, is easily understood and any discrepancy that might be revealed by a clearer exhibit is unintentional and likely not material to the analysis that follows.
[5] Harper Decl., Ex. 8 at 2, ECF 77 at 22.
[6] Harper Decl., Ex. 8 at 4, ECF 77 at 24. Portions of this exhibit are also completely illegible or very difficult to read.

The response to plaintiff's appeal came from Roberts on May 11, 2023, and it stated that on "March 14, 2023, the Therapeutic Level of Care Committee (TLC) met to review your request for surgical removal of mesh and scar tissue, and it was not approved" and that plaintiff had completed the grievance process.[7]

This evidence shows that plaintiff exhausted his claims under the Eighth Amendment and First Amendment in connection with the TLC Committee's denial of plaintiff's request for a second surgery.

The State Defendants attempt to split plaintiff's allegations here regarding his abdominal pain into two parts—one involving the denial of surgery, and one more generally regarding "pain management." *See* State Defs. Reply 2–3, ECF 118. They seem to concede that plaintiff has exhausted the Eighth Amendment claim based on the denial of surgery, but they assert that plaintiff failed to properly exhaust a separate claim based on "pain management." *Id.*; *see also* State Defs. Resp. and Cross-Mot. Summ. J. 10, ECF 92 (conceding that plaintiff's claims based on "denying additional surgery to the umbilical area" were properly exhausted).

But defendants do not satisfactorily explain why these two issues should be treated as separate "claims" that must each be independently exhausted. True, the Supreme Court has distinguished between exhausted and unexhausted claims, *see* State Defs. Reply 3, ECF 118, but defendants have not adequately explained why the two issues here – the denial of plaintiff's request for a second surgery, and the "pain management" that defendants offered plaintiff – must necessarily be treated as separate claims to exhaust. These two issues are different aspects of the medical treatment for plaintiff's abdominal pain, and defendants do not cite any authority for the proposition that plaintiff had to file separate grievances for each individual treatment decision to

[7] Harper Decl., Ex. 8 at 5, ECF 77 at 25.

exhaust a claim regarding the adequacy of the medical care he received for his ongoing condition while in custody. *See Gomez v. Winslow*, 177 F. Supp. 2d 977, 982 (N.D. Cal. 2001) ("Rather than distinct causes of action, allegations that defendants failed to notify [the plaintiff] that he tested positive for hepatitis C antibodies, begin treatment for a matter of years, or provide him with adequate information are simply aspects of the inadequate medical treatment he notified corrections officials about in his administrative appeals . . . and do not require filing separate internal grievances."); *DePetro v. Minev*, No. 2:22-cv-00817-MMD-NJK, 2024 WL 343313, at *5 (D. Nev. Jan. 26, 2024), *dismissed,* No. 24-1288, 2024 WL 5446712 (9th Cir. Oct. 22, 2024) (explaining that the plaintiff's "allegations do not set forth several discrete causes of action but rather are aspects of [the plaintiff's] medical care claim, and thus [the plaintiff] need not file multiple, successive grievances raising the same ongoing issue").

**III. Eighth Amendment Claim**

Plaintiff's sole surviving Eighth Amendment claim is based on the TLC Committee's denial of his request for a second surgery in an attempt to treat his ongoing abdominal pain. To succeed on an Eighth Amendment claim arising from allegedly inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is a "high legal standard" that requires the plaintiff to establish both "objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004). First, the plaintiff must allege that the medical need at issue is objectively "serious," meaning that the defendant's alleged failure to treat it resulted in "further significant injury or the unnecessary and wanton infliction of pain." *Peralta v. Dillard,* 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) (simplified); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because

society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.") (simplified). The second subjective element requires the plaintiff to allege facts showing the defendant knew of and disregarded "an excessive risk to inmate health and safety," which "requires more than ordinary lack of due care." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (simplified); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The alleged indifference must be substantial; "indifference, negligence, or medical malpractice, ... [e]ven gross negligence" are not sufficient "to establish deliberate indifference to serious medical needs." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013) (simplified).

Plaintiff's complaint asserts that the defendants violated his Eighth Amendment rights beginning on or after March 14, 2023, by "denying plaintiff the revision surgery to the umbilical area." Compl. ¶ 36, ECF 2. Assuming, for the sake of analysis, that plaintiff's abdominal pain is an objectively serious medical need, plaintiff has not produced evidence sufficient to show that defendants acted with deliberate indifference in denying revision surgery or offering pain-management options. Between 2021 and 2025, plaintiff's abdominal area was repeatedly examined by numerous medical providers including physicians, surgeons, and ODOC health care staff, and plaintiff received multiple ultrasounds and CT scans.[8] In notes from a surgical consult plaintiff had with Dr. McBee on March 6, 2023, Dr. McBee wrote as follows regarding plaintiff's "chronic postoperative pain":

[8] *See* Seale Decl., ECF 117 (sealed) (summarizing plaintiff's medical history); *id.*, Ex. 1, ECF 117-1 (sealed) (documents from plaintiff's medical file).

> Pain at umbilicus and left mid abdomen. Patient self describes early postoperative heavy lifting and symptoms suggestive of possible repair disruption. CT scan shows no evidence of disrupted repair, inflammation, or fluid collection. Injection of combination Marcaine/Kenalog steroid May 2, 2022.
>
> . . .
>
> [Plaintiff] appears to have chronic pain in the region of prior surgical intervention without associated hernia.
>
> Although it is rarely beneficial in an absolute sense, patient does desire exploration and removal of any scar tissue or mesh if it is found to be possibly beneficial. It would be unlikely . . . that an occult hernia would be found though it is a possibility also.
>
> I am willing to explore the wound and debride [or] otherwise revise any scar tissue that may or may not be accounting for his discomfort. This might include actual explantation of mesh. Repair of the defect without mesh or by some other means may be required.
>
> Patient clearly understands the risks of bleeding, infection, and of course the possibility of providing no relief at all to his pain problem. His significant abdominal obesity (262 pounds) certainly does put strain on any wound of the abdomen. Weight loss as a[n] adjunct to improvement of his symptoms is discussed also.[9]

On the "Provider's Returning Information" form, Dr. McBee wrote:

> Though rarely beneficial, pt desires exploration, "removal" of scar tissue/mesh if able. It may be helpful; he understands it may have no beneficial effect but strongly wishes to proceed.[10]

On that same form, the box "To TLC" was checked, accompanied by the following request:

"Surgical removal scar tissue / possible mesh removal."[11] And, as mentioned previously, the

---

[9] Seale Decl., Ex. 1 at 84, ECF 117-1 (sealed); *see also* Harper Decl., Ex. 20, ECF 77 at 44 (in which plaintiff attached discovery responses from Dr. McBee that reproduced the text of plaintiff's March 6, 2023, chart notes).
[10] Seale Decl., Ex. 1 at 81, ECF 117-1 (sealed).
[11] *Id.*

TLC Committee subsequently denied the request for surgical removal of mesh or scar tissue on the basis that it was "not indicated at this time."[12]

At bottom, plaintiff's theory regarding his Eighth Amendment claim is that he should have received some kind of surgical repair or "revision surgery" to treat his abdominal pain. But the fact that plaintiff disagreed with his medical providers or the TLC Committee about the appropriate method of treatment for his symptoms is not sufficient to establish an Eighth Amendment claim. "[A] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2012)). "Rather, to show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 1092 (simplified). "Deliberate indifference is a high legal standard" and a "showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* (citing *Toguchi,* 391 F.3d at 1060).

There is no evidence in the record suggesting, much less establishing, that surgery was the only medically acceptable treatment for plaintiff's abdominal pain. Dr. McBee was skeptical that surgery would relieve plaintiff's pain—he recognized that plaintiff strongly desired some kind of surgical "exploration" and potential "removal of any scar tissue or mesh," but he explained to plaintiff that while he was willing to perform such a procedure, it was "rarely beneficial in an absolute sense" and it was possible that further surgery might not provide any

[12] Seale Decl., Ex. 1 at 79.

relief for plaintiff's pain. Furthermore, defendants produced a medical expert opinion from Dr. Edwin Irish who explains that after reviewing plaintiff's medical records, he concluded as follows:

> [Plaintiff] has undergone innumerable evaluations including but not limited to physical exams and multiple imaging studies. None of these evaluations has revealed any identifiable explanation for this persistent pain. Specifically, no evidence of hernia recurrence, mesh disruption, mesh infection, granuloma, or neuroma is present.
>
> I conclude that [plaintiff's] diagnosis is chronic abdominal pain in the setting of a previous umbilical hernia repair and that no identifiable objective explanation has been found despite numerous diagnostic interventions. The likelihood of additional diagnostic interventions being of value is extremely low.
>
> The yield of a "surgical exploration" of the previous surgical site in a quest for diagnostic or therapeutic information would be so low as to be absolutely contraindicated and would no doubt result not only in no pain relief but rather a worsening of the pain. The duration of this pain and the extensive and repeated evaluations thereof renders it an almost impossibility that it is due to a serious or life-threatening underlying condition.
>
> The most appropriate therapeutic approach to [plaintiff's] pain syndrome at this time would [be] a chronic pain management program. In my extensive evaluation of these records and this file, I find no evidence of a deviation from, or violation of, the standard of care on the part of any of the practitioners herein.[13]

Defendants offered plaintiff a number of different less invasive options for treating his pain, including a "Kenalog/Marcaine injection," anti-inflammatory medications that plaintiff refused, and others, and performed several CT scans of the area as they continued to monitor plaintiff's condition and continued complaints.[14]

It was not a violation of the Eighth Amendment for the TLC Committee to deny plaintiff's request for this "exploration" based on Dr. McBee's notes and explanations about the

---

[13] Irish Decl., Ex. 2 at 9, ECF 95-2.
[14] *E.g.*, Seale Decl. ¶¶ 7, 9, 19, 23, ECF 117 (sealed).

procedure, its risks, and its potential treatment outcomes. *See Jenkins v. Shelton*, No. 3:15-cv-00558-SI, 2018 WL 1528753, at *7 (D. Or. Mar. 28, 2018), *aff'd,* 765 F. App'x 156 (9th Cir. 2019) ("A prisoner's mere disagreement with his or her medical treatment . . . is not actionable under the Eighth Amendment.") (citing *Toguchi*, 391 F.3d at 1058); *see also Hamby*, 821 F.3d at 1094 (9th Cir. 2016) (explaining "there are many cases, both reported and unreported, holding that prison medical personnel did not violate the Eighth Amendment even though they denied surgical treatment to an inmate with a reducible hernia" and instead pursued conservative treatment such as pain medication and monitoring) (collecting cases).

Not only that, but there is no contradictory expert opinion evidence that defendants' care for plaintiff and chosen treatment path violated the standard of care, or in other words, was negligent. And even if there was some evidence that could support a finding that defendants were negligent in treating plaintiff's condition, that would not be sufficient to sustain an Eighth Amendment claim. *See Lobue v. Reese*, No. 6:23-cv-00244-YY, 2026 WL 1650755, at *8 (D. Or. June 8, 2026) ("At most, plaintiff's allegations could support a negligence claim, but that is not sufficient to sustain an Eighth Amendment claim for deliberate indifference.") (citing *Librande v. Oregon Dep. of Corrs.*, No. 6:24-cv-01739-MTK, 2026 WL 638454, at *4 (D. Or. Mar. 6, 2026)); *see also Davis v. Platas*, No. 3:19-cv-01522-JR, 2020 WL 3979688, at *4 (D. Or. June 16, 2020), *report and recommendation adopted,* No. 3:19-cv-01522-JR, 2020 WL 3977610 (D. Or. July 13, 2020) ("The only medical opinion in the record indicates that performing the surgery would risk a poor outcome. The doctors instead treated plaintiff's pain with steroid injections. There are no other opinions in the record suggesting a better course of treatment and even if there were, a mere difference in medical opinion is insufficient to establish deliberate indifference."); *Bray v. Oregon*, No. 3:23-cv-00631-CL, 2025 WL 3563415, at *12

(D. Or. Dec. 11, 2025) ("At most, the failure to ensure that Plaintiff had constant access to bags for therapeutic ice rises to the level of negligence, which is not sufficient to survive summary judgment on a claim for an Eighth Amendment violation.").

Thus, the State Defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims based on the treatment he received for his abdominal pain—whether that be the denial of his request for a second surgery in 2023 or the "pain management" options plaintiff was offered for his symptoms. *See Wik v. Shelton*, No. 3:07-cv-01726-HA, 2009 WL 2163529, at *6 (D. Or. July 17, 2009) ("While plaintiff may not have received perfect medical care, the Eighth Amendment only requires that defendants not act with deliberate indifference to his serious medical needs.").[15]

## IV. First Amendment Claim

As described above, plaintiff's sole remaining First Amendment claim asserts that "both Roberts and Davies denied the surgery in retaliation for plaintiff filing complaints about each of them." Pl. Resp. Mot. Summ. J. 4, ECF 107 (some formatting modified); *see also* Pl. Mot. Strike 2, ECF 103 ("The primary issue related to the Second Claim of the Complaint is that Defendants Roberts and Davies denied plaintiff the surgery requested by Dr. McBee on March 14, 2023 and the decision by them was based on First Amendment Retaliation.") (some formatting modified).

An inmate's claim for First Amendment retaliation has five elements: (1) the plaintiff engaged in protected conduct; (2) the defendant took some adverse action against the plaintiff;

[15] For similar reasons, even if plaintiff had filed a grievance regarding the 2024 medication incident with Davies, the claim would still fail on its merits. The undisputed evidence in the record shows that, even assuming there was some mistake in prescribing plaintiff Augmentin (apparently a penicillin-based medication to which plaintiff was allergic), Davies promptly corrected the prescription and placed it on "hold" before plaintiff received any dose. Those facts do not support an Eighth Amendment claim.

(3) a causal connection between the protected conduct and adverse action; (4) the adverse action had a chilling effect on the plaintiff's First Amendment rights; and (5) the defendant's "retaliatory action did not advance legitimate goals of the correctional institution[.]" *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Plaintiff's retaliation claim fails for a number of reasons. First, there is no evidence that any medical provider actually recommended the second surgery or determined it was medically necessary. Dr. McBee noted that plaintiff "strongly wishe[d]" to have surgery, despite Dr. McBee's explanation that it was "rarely beneficial" and that the procedure might have "no beneficial effect."[16] Though Dr. McBee was willing to do the procedure if that was what plaintiff desired despite the risks, the TLC Committee had a legitimate and reasonable basis for denying plaintiff's request for surgery and instead choosing to offer plaintiff a more conservative treatment approach that included offering pain medication and a "wait-and-see" approach. As discussed above, there is no evidence in the record that this more conservative course of treatment fell below the standard of care or that plaintiff's second surgery was medically necessary. Plaintiff essentially disagrees with the treatment he was provided, and that is not an "adverse action" for a retaliation claim. *See Singh v. Washburn*, No. 2:14-cv-01477-SB, 2020 WL 7049552, at *21 (D. Or. Nov. 30, 2020) (finding that an inmate's retaliation claim against prison officials was based on his "disagree[ment] with the diagnosis and recommended course of treatment (allergy medications, an inhaler, and hydrocortisone cream)" and that "[s]uch a disagreement does not support a finding of retaliation").

Furthermore, plaintiff has not produced any evidence that the TLC Committee or Roberts and Davies, in their roles as members, denied plaintiff's request for a second surgery because

[16] Seale Decl., Ex. 1 at 81, ECF 117-1 (sealed).

plaintiff had made previous complaints about them. The medical records did not indicate the surgery was necessary, and plaintiff does not offer anything other than his speculative belief that the denial must have been based on something other than the information in plaintiff's medical records. *See Emory v. Nooth*, No. 2:18-cv-02096-MC, 2021 WL 1321292, at *3 (D. Or. Apr. 8, 2021), *aff'd sub nom. Emery v. Nooth*, No. 21-35278, 2021 WL 6067012 (9th Cir. Dec. 20, 2021) (finding that prison official's denial of plaintiff's "purchase order" for "supportive shoes" was not retaliatory in part because there was no evidence that a health care provider had ever determined supportive shoes were "medically necessary" and plaintiff "present[ed] no evidence that [the defendants] denied the purchase order *because of* plaintiff's complaints").[17]

## V. Claims Against Bugher

Defendant Bugher, who during the relevant time was employed as the Assistant Director of Corrections for Health Services of ODOC, has moved separately for summary judgment. Bugher Mot. Summ. J. 3, ECF 89. Although Bugher joined the State Defendants' motion for summary judgment, *id.* at 2, Bugher does not advance any specific argument regarding exhaustion and instead asserts that plaintiff's claims against him should be dismissed on the merits. Plaintiff's briefing regarding the claims against Bugher is not well-developed, but even broadly construing the scattered arguments plaintiff advances as to Bugher, those claims fail. *See, e.g.*, Pl. Mot. Summ. J. 2, ECF 76 ("The Defendants involved in the grievance process (Halladay, Whitbread, Roberts and Bugher) failed to acknowledge or address the reports of

[17] For similar reasons, even if plaintiff had exhausted his First Amendment claim against Davies in connection with the 2024 medication incident, that claim would fail on the merits. There is no evidence, apart from plaintiff's speculation, that Davies' alleged conduct in relation to this incident was caused by any desire to retaliate against plaintiff. Furthermore, as described above in footnote 15, Davies corrected the mistaken prescription promptly and thus there is no evidence from which it could be concluded that this was an adverse action that could support a First Amendment retaliation claim in this context.

retaliation in the grievance process[.]"); Pl. Resp. Mot. Summ. J. 6, ECF 107 ("Plaintiff personally corresponded with Defendant Bugher about being mistreated by Defendant Roberts; Bugher ignored his obligations as Roberts' supervisor and allowed the violations to continue until they were both fired.").

Plaintiff has not produced evidence sufficient to create a question of fact as to whether Bugher personally "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Section 1983 liability "arises only upon a showing of personal participation by the defendant," acting under color of state law, that deprived the plaintiff of a constitutional or federal statutory right. *Id.* Supervisors are not vicariously liable for unconstitutional acts done by the individuals they oversee, but "they can be liable for their own conduct." *Peralta,* 744 F.3d at 1085 (en banc). A supervisor may be liable under section 1983 only upon a showing of either (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Plaintiff has not produced any evidence showing that Bugher was involved in plaintiff's treatment or any of the specific decision-making that went into it, or that Bugher had any direct responsibility to train or supervise the individuals involved in providing plaintiff's medical care. *See Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (finding allegations that state agency administrator had knowledge of "systemic failures of foster care in Nevada" were not sufficient to state a section 1983 claim because the plaintiffs did not allege that the directors had "any personal knowledge of the specific constitutional violations that led to [the plaintiffs'] injuries, or that they had any direct responsibility to train or supervise the caseworkers" involved).

The fact that plaintiff corresponded with Bugher after an alleged violation occurred is not sufficient to establish supervisory liability under section 1983. *See Moore v. Thurnau*, No. 2:21-cv-00483-YY, 2024 WL 5340463, at *5 (D. Or. Oct. 3, 2024), *report and recommendation adopted sub nom. Moore v. Cain*, No. 2:21-cv-00483-YY, 2025 WL 239093 (D. Or. Jan. 17, 2025) ("There is no supervisory liability under section 1983 for officials who learn of past constitutional violations."); *see also Salas v. Nichols*, No. 4:17-cv-00663-JST, 2017 WL 2834061, at *9 (N.D. Cal. June 30, 2017) (dismissing claims against supervisory defendants who merely reviewed post-violation grievances because such evidence only established that the defendants were "on notice regarding alleged past constitutional violations, and not on notice regarding ongoing constitutional violations").

And finally, Bugher's involvement in the grievance appeal is not sufficient to establish that Bugher was personally involved in the underlying conduct that forms the basis of plaintiff's Eighth Amendment claims here. *See Harper v. Taylor*, No. 2:24-cv-00302-YY, 2025 WL 1736869, at *11 (D. Or. June 23, 2025) (explaining that "absent any facts showing a retaliatory motive," plaintiffs do not have a "separate constitutional right to have [their] grievances processed in any particular manner") (quoting *Murillo v. Godfrey*, No. 2:18-cv-02342-JGB-JC, 2023 WL 2825701, at *13 (C.D. Cal. Feb. 21, 2023), *report and recommendation adopted,* 2023 WL 2733374 (C.D. Cal. Mar. 31, 2023)); *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) ("The district court properly dismissed the claims against ... [the] defendants [who] were only involved in the appeals process. Because inmates lack a separate constitutional entitlement to a specific grievance procedure, these defendants cannot be held liable under § 1983 for denying [the plaintiff's] appeal.") (simplified).

Therefore, Bugher is entitled to summary judgment on any claims plaintiff asserts against him.

## VI. Other Outstanding Motions

Plaintiff's Motion to Strike Declaration of Jason Villers (ECF 101) is denied. The thrust of this motion is a purported discrepancy between the Villers Declaration filed in support of defendants' motion for summary judgment—which states that plaintiff "did not file any grievances against . . . Davies . . . relating to the retaliatory actions against [plaintiff] regarding treatment for his abdominal pain"[18]—and the text of the March 2023 Grievance set out above in which plaintiff said he was "grieving the TLC Committee for refusing" his request for a second surgery and stating his belief that they "[did] it in retaliation for complaining and reporting misconduct like perjury (Davies) and getting another member on the Committee put under review by the Oregon Medical Board (Roberts)."[19] Plaintiff asserts that "[p]aragraph 6 of Villers' declaration is perjury" and that it "falsely describ[es]" plaintiff's claims "as unexhausted[.]" Later, plaintiff asserts that the State Defendants' motion for summary judgment and other briefing should be entirely stricken based in part on the purportedly false statement regarding exhaustion. *See* Mot. Strike 5, ECF 103.

There are several reasons why the motion to strike fails. For one thing, the discrepancy is not as patent as plaintiff contends; his grievance specifically says he was grieving the "TLC Committee" and thus Villers' statement that plaintiff had not filed a grievance against Davies individually is at the very least a reasonable and defensible position to take based on the evidence in the record. More importantly, considering the record as a whole, the court concludes

[18] Villers Decl. ¶ 6, ECF 94.
[19] Harper Decl., Ex. 8 at 1, ECF 77 at 21.

that plaintiff adequately put prison officials on notice of his retaliation claim and exhausted the available administrative remedies, allowing the court to consider that claim on its merits. That result seems to be what plaintiff is actually seeking here. The court agrees with plaintiff's exhaustion argument, but the parties' competing interpretations of the record are not a basis for striking the Villers Declaration in its entirety or, for that matter, striking the State Defendants' briefing that relies on it.

Plaintiff's Motion to Strike (ECF 103) was discussed at the beginning of this Opinion and Order to clarify a pleading issue. This motion also seeks to strike declarations from Dr. Edwin C. Irish and Michael Seale, and as mentioned just previously, seeks to strike the State Defendants' Motion for Summary Judgment and other related briefing. Mot. Strike 1, ECF 103. Those motions are denied. Dr. Irish is the State Defendants' medical expert who reviewed plaintiff's medical records, and his declaration summarizes the findings from the attached "Independent Medical File Review" that Dr. Irish conducted in March of 2025. State Defs. Mot. Summ. J. 12, ECF 92; Irish Decl. ¶¶ 1–10, ECF 95; *id.*, Ex. 2 at 1, ECF 95-2. Plaintiff asserts, among other things, that Dr. Irish "contradicts himself" and his opinion is "immaterial, incorrect, and moot." The problems, if any, with Dr. Irish's declaration are related to its evidentiary weight or value, and not to whether it should be excluded from the case altogether or its admissibility into the record. The problem plaintiff identified with the Seale Declaration—that defendants filed it under seal and did not deliver a hard copy to plaintiff—has been cured. *See* Mot. Strike 4, ECF 103. Plaintiff later received the Seale Declaration, and his motion for additional time to respond to the Seale Declaration was granted. *See* Motion for Leave to Respond to the Late Declaration from Michael Seale 1, ECF 122; Order (May 6, 2026), ECF 124. Thus, there is no basis for striking the Seale Declaration from the record. And because there is no basis to strike any of the

declarations that plaintiff has challenged, there is no basis to strike the State Defendants' motion for summary judgment because they relied on those declarations.

Plaintiff's Motion for Production of Video Records (ECF 125) is denied as moot because it pertains to the 2024 medication incident with Davies, and plaintiff's claims based on that incident have been dismissed without prejudice for failure to exhaust.

Plaintiff's Motion for Criminal Referrals (ECF 128) is denied. "Criminal proceedings, unlike private civil proceedings, are public acts initiated and controlled by the Executive Branch." *Clinton v. Jones*, 520 U.S. 681, 718 (1997); *see also United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) ("Charging decisions are generally within the prosecutor's exclusive domain."); *Miller v. Gilbert*, No. 1:23-cv-00094-SPW, 2024 WL 3717296, at *6 (D. Mont. Aug. 6, 2024) (explaining that the court "does [not] have the power to make criminal referrals").

**ORDER**

The court orders as follows:

- Defendant Roberts' Motion for Joinder (ECF 121) is granted.
- Plaintiff's Motion for Summary Judgment (ECF 76) is denied, and defendants' Motions for Summary Judgment (ECF 89, 91, 92) are granted as follows: plaintiff's claims against defendant Davies asserted in the supplemental complaint are dismissed without prejudice for failure to exhaust; plaintiff's Eighth Amendment and First Amendment retaliation claims based on the TLC Committee's denial of plaintiff's request for a second surgery are dismissed with prejudice; and plaintiff's claims against Bugher are dismissed with prejudice.

- Plaintiff's Motion to Strike the Declaration of Jason Villers (ECF 101) is denied.
- Plaintiff's additional Motion to Strike (ECF 103) is granted in part as to plaintiff's request to strike certain allegations from the complaint and is otherwise denied.
- Plaintiff's Motion for Production of Video Records (ECF 125) is denied as moot.
- Plaintiff's Motion for Criminal Referrals (ECF 128) is denied.

IT IS SO ORDERED.

DATED November 13, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge